[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12459
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-24081-CMA

LARRY EUGENE COLLINS,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 13, 2018)

Before TJOFLAT, NEWSOM and HULL, Circuit Judges.

PER CURIAM:

Petitioner Larry Collins appeals the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. In his petition, Collins challenges his Florida convictions for attempted premeditated first-degree murder and unlawful possession and discharge of a firearm. Collins argues that his attorney rendered ineffective assistance during his criminal trial, in violation of his Sixth Amendment right to the assistance of counsel. After careful review, we affirm.

## I.  BACKGROUND

### A.  Arrest of Petitioner

On November 23, 2005, several Miami law enforcement officers responded to reports of gunfire and a burning car. When the officers arrived at the scene, they found two men—Eric Collins[1] and James Zachery—lying on the ground next to a burned Dodge Ram truck.

Eric and Zachery had been shot several times and set on fire, but they were alive. According to the officers, Eric and Zachery identified Larry Collins as their attacker and claimed that his car, a black Lexus sports utility vehicle ("SUV"), was parked near the crime scene. After a brief search, the officers found Larry Collins'

---

[1]Eric Collins and Petitioner Larry Collins are not related. To avoid confusion, we refer to Eric Collins as "Eric" and Petitioner Larry Collins as "Larry Collins" or "Petitioner Larry Collins" in this opinion.

2

Lexus a few blocks away.  Shortly thereafter, Larry Collins appeared and tried to prevent the officers from towing his Lexus.  The officers then arrested Larry Collins.

At trial, the State called Zachery and the officers as witnesses, as well as a forensic technician and an arson investigator.  The State did not call Eric, however, because he died in 2009.  In lieu of his live testimony, the State read aloud to the jury Eric's testimony from a 2006 pretrial hearing and a 2007 deposition.  Larry Collins' defense attorney was present at both the 2006 pretrial hearing and the 2007 deposition.

## B.  Trial Evidence

The evidence presented at 2010 trial reflected the following.  On November 23, 2005, James Zachery drove from Orlando to Miami to purchase cocaine from his cousin, Eric Collins, who lived in Miami.  Zachery planned to purchase the drugs with cash folded with rubber bands and placed in a brown paper bag.  Zachery kept the brown paper bag in his truck's center console between the driver's and the passenger's seats.

While he was on his way, Zachery called Eric and asked if Eric had any cocaine to sell.  Eric told Zachery that he did not have cocaine to sell but that he could get it from Larry Collins.

After Zachery arrived at Eric's house, Eric called Larry Collins, who came over to Eric's house.  Upon arrival, Larry Collins told Eric and Zachery that he did not have cocaine but that he would take them to purchase cocaine from someone else.  Larry Collins explained to Eric and Zachery that, before they could purchase cocaine, he first needed to drop off his car—a black Lexus sport utility vehicle—at his girlfriend's house.  Eric and Zachery agreed to Larry Collins' plan.

The three of them left Eric's house.  Zachery drove his Dodge Ram truck with Eric in the passenger seat and followed Larry Collins, who drove his black Lexus sport utility vehicle.  Zachery and Eric followed Larry Collins for several blocks before Larry Collins parked his black Lexus.  Larry Collins then joined Eric and Zachery in Zachery's truck, sitting in the rear passenger-side seat, just behind Eric.

Under Larry Collins' guidance, Zachery drove a few more blocks into a neighborhood until Larry Collins told Zachery to park.  Larry Collins told Eric and Zachery that a friend would soon bring the cocaine for Zachery to purchase.  After waiting for several minutes, Zachery began to get nervous.  Eric felt similarly, and turned around to Larry Collins, who was sitting in the backseat, and told him that they were ready to leave.

4

As they were about to leave, Eric noticed that a black sedan was driving towards them.  The black sedan slowly drove past Zachery's truck and parked nearby.  Now even more nervous, Zachery started his truck in order to leave.

At this point, according to Eric and Zachery, Larry Collins (who was sitting in the backseat) pulled out a gun and began shooting Eric (who was sitting in the front passenger seat) and Zachery (who was sitting in the driver's seat).  Eric was shot three times in his back and shoulders.  Zachery was also shot several times on the right side of his body, but could not remember how many times.

Eric then turned around to face Larry Collins, who shot Eric in his jawbone on the left side of his face.  Having each been shot several times, Eric and Zachery acted as if they were dead—Eric by falling forward onto the truck's dashboard and Zachery by slumping over to his left onto the driver-side door.

As he played dead, Zachery slightly opened his eyes and watched Larry Collins exit the truck and tell someone to "get gas."  Zachery also noticed that Eric was still in the truck, slumped over onto the truck's dashboard.  Zachery then saw Larry Collins open up the passenger-side door and douse the front and the back of the truck cabin with gasoline.  Larry Collins also poured gasoline on top of Eric and Zachery.

5

Zachery then heard Larry Collins say "we gonna burn these motherfuckers up Miami style," just as Larry Collins lit a match and dropped it in Eric's lap. Immediately, Eric and Zachery were engulfed in flames.

With his eyes still barely open, Zachery watched as Larry Collins ran away from the truck. Zachery then exited the truck and rolled on the ground in an effort to snuff out the flames.

According to Eric, after Larry Collins shot him, Eric saw a second individual standing outside of the truck's driver's side door. Eric heard more gunfire and then heard Larry Collins open the front passenger door. With his door now open, Eric fell out of the truck and continued to play dead on the ground. Larry Collins then walked towards Eric and stood over him.

Eric heard Larry Collins order someone "to get the gas" and felt a liquid being poured on him that smelled like gas. Eric also heard Larry Collins reach into Zachery's truck, just before Eric's lower torso and legs were engulfed in flames. Eric then saw Larry Collins run away from Zachery's burning truck.

After neighbors called 911, police and paramedics arrived on the scene. Zachery told one of the officers that he "didn't know the guy['s] name [who had done this to him] but [that] he was driving a black Lexus truck that was parked a couple [of] streets over." Zachery remembered being placed in the ambulance but lost consciousness shortly thereafter. Zachery regained consciousness several

6

weeks later and remained hospitalized for four more months.  Zachery would ultimately undergo five surgeries during his recovery, including an above-the-knee amputation of one leg.

While paramedics and officers attended to Zachery, police also spoke to Eric, who was lying on the ground next to Zachery's burning truck.  Eric was "hurt, bleeding, a little burned" and was in and out of consciousness.  Eric told one officer that his attacker was Larry Collins and that Larry Collins was likely to be near his Lexus SUV, which was parked nearby.  Based on the information received from Eric, the responding police officers issued a "be on the lookout advisory" for Larry Collins.

After Eric was taken to the hospital, treated by the trauma team, and recovering in a hospital bed, a Miami police detective spoke with Eric for a few minutes.  The detective asked Eric if he knew who had done this to him, and Eric responded that "his friend, Larry, did it."  Eric also told the detective that "when Larry was in the backseat he pulled out a gun and shot [Eric and Zachery]" and immediately thereafter, "someone came up and [threw] gas and set the car on fire." Eric also told the detective that he did not know if Larry Collins had set him on fire because he could not see at that point.

Meanwhile, at the scene of the crime, Miami police officers were surveying the area for the black Lexus that Eric and Zachery referenced when speaking to

police.  Within minutes, the officers found a black Lexus SUV parked a few blocks away from the crime scene.  The officers checked the Lexus' vehicle identification number and determined that Larry Collins was the owner.  The officers then arranged for the Lexus to be towed.

As the officers began to tow the Lexus, a dark SUV arrived at the scene and blocked the tow truck.  Two men—one of whom was Larry Collins—exited the dark SUV, yelling and waving their arms at the tow truck.  Larry Collins approached an officer who was escorting the tow truck and told her that he was the owner of the Lexus.  The officer then arrested Larry Collins and brought him back to the crime scene.

When Larry Collins arrived at the crime scene, Miami police officers noticed that Larry Collins' clothing looked "newly worn" and "didn't fit [him] properly."  The officers also noticed that Larry Collins' hands "were extremely ashy," which the officers "associate[d] with excessive washing."

While at the crime scene, the officers conducted a hand swab test for gunshot residue on Larry Collins.  The test came back positive for gunshot residue.  The officers subsequently took Larry Collins to the police station interrogation room, where officers noticed that Larry Collins smelled like "a very strong odor of gas."

8

When inspecting the crime scene, the officers found two spent shell casings from a semiautomatic weapon in the rear passenger seat of Zachery's burned truck, where Larry Collins had been sitting.  Officers also found a spent projectile embedded in the back of the truck's driver's seat.  When the officers searched Larry Collins' Lexus, they found $5,191.10 in cash wrapped with rubber bands inside the glove compartment, as well as a brown paper bag.

When an arson investigator with the Miami Fire Department inspected Zachery's truck, he concluded that arson was the cause of the fire.  At trial, the arson investigator testified that an accelerant, likely gasoline, was poured into the truck and lit with an open flame.

Weeks later, on December 30, 2005, a social worker named Jacqueline Vilaire visited Eric while he was recovering in the hospital.  After the visit, Vilaire made the following December 30 entry in Eric's medical records, which was over a month after the crime:

> Social worker questioned patient re the circumstances of the shooting and burns and patient reports that he was in a truck with his cousin and assumed friend, Larry, when an unknown assailant approached the truck and began shooting.  Once the shooting began outside of the truck, Larry, then began to rob the patient and his cousin.  After the patient and his cousin were shot and robbed gasoline was then poured into the truck and ignited via the unknown assailant outside of the truck.  Larry has since been apprehended and the unknown assailant (sic) of the truck remains at large.

Vilaire did not testify at Larry Collins' trial, but her medical entry was admitted into evidence by stipulation of the parties.  The medical entry was also read aloud to the jury during Larry Collins' cross-examination of a state witness and discussed again during Collins' direct examination of the defense's memory expert.

In this § 2254 petition, Larry Collins argues that his trial counsel rendered ineffective assistance when he failed to investigate and call Vilaire as a witness at trial.  Larry Collins contends that there is a reasonable probability that, if Vilaire had testified at trial about Eric's statements as reflected in her December 30 medical entry, the result of his criminal trial would have been different.

As discussed later, Vilaire's medical entry is not as exculpatory as Larry Collins claims it to be.  In the medical entry, Vilaire wrote that an "unknown assailant approached the truck and began shooting" from outside the truck. Notably, Vilaire's medical entry never says that Larry Collins did not shoot Eric or that he was not inside the truck.  And Vilaire's medical entry says that once the shooting began, Larry Collins began robbing Eric and Zachery, which also places him inside the truck and in coordination with the "unknown assailant" outside the truck.[2]

---

[2]We reject Petitioner Larry Collins' argument that the state trial court made an unreasonable determination of the facts when it stated that Vilaire's testimony concerned only

10

Against the advice of his own counsel, Larry Collins testified to the following at trial. Larry Collins was an undercover informant for the Drug Enforcement Agency ("DEA") who set up the November 23, 2005 drug deal such that Eric and Zachery would purchase drugs from a third party—a person named "EZ"—as part of Larry Collins' undercover operation. Larry Collins admitted that he drove his black Lexus SUV and led Eric and Zachery to a neighborhood near Eric's house. Larry Collins parked his car and joined Eric and Zachery in Zachery's truck. The three of them then drove to EZ's location. But once they arrived, the operation went awry.

Without warning, EZ began firing a gun into Zachery's truck from outside the truck, shooting Eric and Zachery several times. Zachery's truck then became engulfed in flames. At this point, Larry Collins exited Zachery's truck and pulled Eric out of the truck. Because Zachery was not moving, Larry Collins assumed that he was dead. Larry Collins then ran away from the burning truck and hid in a nearby carport.

Larry Collins called a friend to come pick him up, and that friend took Larry Collins to his Lexus, which was still parked nearby. When Larry Collins got to his Lexus, he saw that several police officers were having it towed. Realizing that he

---

"collateral matters." To some extent, Vilaire's testimony was collateral because it was only impeachment evidence, not substantive evidence of guilt.

In any event, the state trial court's conclusion that Eric's statements to Vilaire concerned collateral matters was a legal conclusion on Strickland's prejudice prong, not a finding of fact.

11

would likely be a person of interest to the police, Larry Collins approached the police officers and identified himself as the owner of the Lexus. The officers then arrested Larry Collins. After the officers arrested him, Larry Collins kept telling the officers that he did not shoot Eric or Zachery.

To rebut part of Larry Collins' testimony, the government presented a DEA agent, who testified that Larry Collins was an undercover informant for the DEA but that the DEA was not involved in the November 23, 2005 drug transaction with Eric and Zachery.

The government also recalled one of its earlier witnesses—the Miami detective who testified about Larry Collins' appearance after he was arrested on November 23, 2005. The detective testified that Larry Collins gave a different version of his alibi on the night of the attack. According to the detective, Larry Collins conceded that he was in Zachery's truck meeting with Eric and Zachery at one point in the evening, but claimed that he had left Zachery's truck before the attack occurred. Larry Collins maintained that he did not know anything about Eric and Zachery getting shot.

Instead, Larry Collins stated that, during his meeting with Eric and Zachery, EZ drove by Zachery's truck and parked nearby. Larry Collins then got out of Zachery's truck and entered EZ's car before driving away from Zachery's truck. Larry Collins told the detective that he did not know what happened to Eric and

12

Zachery after he left.  Larry Collins also stated that, after he had left Zachery's

truck with EZ, he went to EZ's house (the location of which Larry Collins never

told the detective), where he bathed, changed clothes, and rested for a couple of

hours, after which EZ brought Larry Collins back to the crime scene.

## C.  Indictment, Conviction, and Direct Appeal

On May 1, 2009, the State of Florida charged Petitioner Larry Collins with:

(1) attempted premeditated first-degree murder of Eric Collins by shooting him

with a firearm and setting him on fire ("Count 1"); (2) attempted premeditated

first-degree murder of James Zachery by shooting him with a firearm and setting

him on fire ("Count 2"); (3) unlawful possession and discharge of a firearm while

engaged in a criminal offense (attempted premeditated murder) that caused death

or serious bodily harm to Eric Collins and James Zachery ("Count 3"); (4) causing

damage to a structure by use of fire, resulting in great bodily harm, permanent

disability, or permanent disfigurement to Eric Collins ("Count 4"); and (5) causing

damage to a structure by use of fire, resulting in great bodily harm, permanent

disability, or permanent disfigurement to James Zachery ("Count 5").

After an eight-day trial in April 2010, a jury convicted Larry Collins on

Counts 1, 2, and 3 but acquitted him on Counts 4 and 5.  In June 2010, the Florida

trial court sentenced Larry Collins to life imprisonment on the attempted

premeditated murder convictions in Counts 1 and 2, with a 25-year minimum

mandatory sentence for discharging a firearm during the attempted premeditated murders in Counts 1 and 2, and to a concurrent 15-year prison term for Count 3.[3]

Larry Collins appealed, challenging several evidentiary rulings of the trial court. The Third District Court of Appeal of Florida summarily affirmed the trial court's evidentiary rulings and upheld Larry Collins' convictions. Collins v. State, 116 So. 3d 389 (Fla. Dist. Ct. App. 2013). In December 2013, the United States Supreme Court denied Larry Collins' petition for certiorari. Collins v. Florida, 571 U.S. 1079, 134 S. Ct. 698 (2013).

## D. State Post-Conviction Proceedings

On December 8, 2014, Petitioner Larry Collins filed a motion to vacate, set aside, or correct his sentence under Florida Rule of Criminal Procedure 3.850(a). Larry Collins' 3.850 motion argued, inter alia, that his trial counsel rendered ineffective assistance because he failed to investigate and call Vilaire as a witness, who, according to Larry Collins, would have impeached Eric's testimony that Larry Collins shot him.

On May 19, 2015, the Florida trial court—the Eleventh Judicial Circuit Court—denied Larry Collins' 3.850 motion.[4] The state trial court did not rule on

[3]On October 8, 2014, Petitioner Larry Collins filed a motion to correct an illegal sentence, pursuant to Florida Rule of Criminal Procedure 3.800(a). On May 19, 2015, the trial court granted Larry Collins' motion in part, ordering that he be resentenced to a mandatory minimum of 20 years for discharging a firearm during the attempted premeditated murders in Counts 1 and 2. The Eleventh Judicial Circuit Court's ruling did not affect, however, Larry Collins' overall sentences of life imprisonment on Counts 1 and 2, the attempted premeditated murder convictions.

14

the performance prong.  Rather, the state trial court held that, even assuming that Larry Collins' trial counsel was deficient for not investigating or calling Vilaire as a witness at trial, this deficiency was not prejudicial, because Larry Collins had failed to establish that Vilaire's testimony "would have amounted to [nothing] more than impeachment on collateral matters" and that her testimony would not have affected the verdict.

On August 12, 2015, the Florida appellate court—the Third District Court of Appeal—summarily affirmed the state trial court's denial of Larry Collins' 3.850 motion.  Collins v. State, No. 3D15-1683, 2015 WL 4751355, at *1 (Fla. Dist. Ct. App. Aug. 12, 2015).  Larry Collins did not appeal to the Florida Supreme Court because the intermediate appellate court did not issue a written opinion.  Fla. R. App. P. 9.030(a)(2)(A)(ii) (limiting the Florida Supreme Court's discretionary jurisdiction to review, as relevant here, decisions of Florida district courts of appeal that "expressly construe a provision of the state or federal constitution").

## E.  Federal Post-Conviction Proceedings

On October 29, 2015, Petitioner Larry Collins filed this petition under 28 U.S.C. § 2254 in the United States District Court for the Southern District of Florida.  Larry Collins advanced several claims in support of his petition, including

---

[4]On March 11, 2015, Petitioner Larry Collins filed a habeas corpus petition, alleging that his appellate counsel was ineffective.  On July 30, 2015, Florida's Third District Court of Appeal denied this petition.

15

a claim that his trial counsel failed to investigate and call Vilaire as a witness at trial. This was the same claim made in Larry Collins' prior 3.850 motion.

On February 21, 2017, the magistrate judge issued a report recommending that Larry Collins' § 2254 petition be denied. As to Larry Collins' ineffective counsel claim, the magistrate judge found that trial counsel was not deficient for failing to investigate or call Vilaire, as her testimony would have been cumulative. In addition, the magistrate judge noted that Larry Collins never explained what information Vilaire would have testified to that would have warranted exposing her to cross-examination. The magistrate judge also concluded that Vilaire's testimony would probably not have affected the ultimate verdict, as Larry Collins failed to show how Vilaire's live testimony would have differed from her medical entry, which was published and read aloud to the jury. Larry Collins objected to the magistrate judge's findings and conclusions concerning Larry Collins' ineffective counsel claim, as well as other findings.

On April 27, 2017, the district court adopted the magistrate judge's report and denied Larry Collins' § 2254 petition. As to the ineffective counsel claim, the district court found that Larry Collins' trial counsel made a strategic decision in deciding not to investigate or call Vilaire as a witness at trial and that this decision was not deficient given the cumulative testimony provided by other witnesses at trial. The district court also concluded that Larry Collins did not establish that he

16

was prejudiced by any deficiency, as Vilaire's medical entry was read aloud and published to the jury.  The district court further reasoned that, even if Vilaire had testified, her testimony would have merely impeached Eric's testimony and would not have provided substantive evidence of Larry Collins' innocence.  The district court denied a certificate of appealability ("COA").

Larry Collins appealed.  On September 18, 2017, this Court granted Larry Collins a COA on his ineffective counsel claim—specifically, whether the district court erred in denying Larry Collins' claim that his trial counsel ineffectively failed to investigate and call Vilaire as a witness at trial.

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act governs federal review of state habeas corpus petitions.  See, e.g., Brumfield v. Cain, __ U.S. __, __, 135 S. Ct. 2269, 2288 (2015).  Section 2254 of the Act provides that federal habeas corpus relief for a person in state custody is available only if (1) the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) the state court's decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

17

Accordingly, we must determine whether the state trial court's denial of Petitioner Larry Collins' ineffective counsel claim involved an unreasonable application of Supreme Court precedent or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. We review the state trial court's order denying Larry Collins' 3.850 motion—as opposed to the order of the Florida appellate court—because the latter order was a summary affirmance that contained no reasoning. Wilson v. Sellers, __ U.S. __, __, 138 S. Ct. 1188, 1192 (2018) (explaining that, in the § 2254 context, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. . . . [and] presume that the unexplained decision adopted the same reasoning"); see also Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594 (1991) (explaining that"[w]here there has been one reasoned state judgment rejecting a federal claim [in state habeas corpus proceedings], later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground").

Our review must be "highly deferential to the state court's decision." Davis v. Jones, 506 F.3d 1325, 1331 (11th Cir. 2007) (quotation marks omitted). That is because "an unreasonable application of federal law is different from an incorrect application of federal law." Williams v. Taylor, 529 U.S. 362, 410, 120 S. Ct. 1495, 1522 (2000). In other words, a state court's decision is "contrary to" federal

18

law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 412–13, 120 S. Ct. at 1523.

Larry Collins argues that the state trial court erred in denying his ineffective counsel claim because it unreasonably applied the Supreme Court's standard for deciding ineffective counsel claims, as set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). To make a successful claim of ineffective assistance of counsel, a defendant must show both that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Id. at 687, 104 S. Ct. at 2064. There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690, 104 S. Ct. at 2066. Prejudice occurs when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. Failure to establish either prong is fatal and makes it unnecessary to consider the other. Id. at 697, 104 S. Ct. at 2069.

When analyzing a claim of ineffective assistance under § 2254(d), our review is doubly deferential to the state court's application of Strickland. Harrington v. Richter, 562 U.S. 86, 101, 105, 131 S. Ct. 770, 785–86, 788 (2011).

19

In other words, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. at 105, 131 S. Ct. at 788. "A state court's determination that a claim lacks merit precludes federal habeas corpus relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Id. at 101, 131 S. Ct. at 786 (quotation marks omitted). As the Supreme Court recently stated, "this standard is difficult to meet because it was meant to be." Sexton v. Beaudreaux, 585 U.S. __, 138 S. Ct. 2555, 2558 (2018) (quoting Harrison, 562 U.S. at 102, 131 S. Ct. at 786 (quotation marks omitted)).

## III. DISCUSSION

The district court properly ruled that Petitioner Larry Collins failed to establish that the state trial court unreasonably applied Strickland to his ineffective counsel claim.[5] Vilaire's medical entry was read aloud and published to the jury during defense counsel's cross-examination of a state witness and was separately discussed during the direct examination of the defense's memory expert. The medical entry was also admitted into evidence. Moreover, Vilaire did not have to undergo cross-examination about what Eric told her while he was recovering at the hospital over a month after the attack.

---

[5]Like the state trial court, we assume arguendo that Petitioner Larry Collins' trial counsel was deficient for not investigating or calling Vilaire as a witness at trial.

20

Second, Larry Collins has not proffered what Vilaire's live testimony would have been or if it could have differed from the medical entry.  Importantly, Vilaire's testimony would not have provided her personal account of the attempted premeditated murders but only what Eric told her.  At best, her testimony could only have served as impeachment testimony, not substantive evidence of Larry Collins' innocence.  This is because Vilaire's retelling of Eric's statements constitutes inadmissible hearsay.  See Fla. Stat. §§ 90.801, 90.802 (defining inadmissible hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted").  If anything, trial counsel put the medical entry to effective use by getting it before the jury without Vilaire being subject to cross-examination by the State.

Third, there is little impeachment value in Eric's statements to Vilaire. When Eric spoke to Vilaire, he focused on the second assailant and never stated explicitly that Larry Collins did not shoot him and Zachery in the truck.  And Eric stated that once the shooting started outside the truck, Larry Collins robbed them, placing Larry Collins inside the truck, which was consistent with what Eric and Zachery testified.

Fourth, any impeachment value in Eric's December 30, 2005 statements to Vilaire was greatly diminished by the fact that Eric's November 23, 2005

21

statements to police at the crime scene and at the hospital were consistent with his pretrial hearing and deposition testimony—namely that Larry Collins shot Eric and Zachery. This is on top of the considerable physical evidence found inside Zachery's truck indicating that the backseat passenger, Larry Collins, was shooting from the backseat that night.

Regardless, Vilaire's medical entry was read to the jury, who apparently found it insufficient to rebut the overwhelming evidence that Larry Collins shot Eric and Zachery. This evidence included: (1) the testimony of Eric, who stated that Larry Collins shot him several times (including one shot to Eric's face as Eric was looking at Larry Collins); (2) the testimony of Zachery, who also testified that Larry Collins shot him several times; (3) the swab test, which revealed that there was gunshot residue on Larry Collins' hands; (4) the testimony of one forensic technician, who testified that he found spent bullet casings on the floor of the truck near where Larry Collins had been sitting and bullet fragments in the back of the driver's seat (and no one, not even Larry Collins, disputes that there was only one person sitting in the back seat of Zachery's truck at the time of the shooting: Larry Collins); (5) a Miami police officer's testimony that Eric identified Larry Collins as his attacker while paramedics treated Eric at the crime scene; (6) the testimony of a Miami detective, who stated that Eric told him that "his friend, Larry" attacked him after Eric was taken to the hospital on the night of the incident; (7) Eric's and

22

Zachery's statements to the police while at the crime scene that their attacker parked his black Lexus SUV near the crime scene; and (8) the testimony of a Miami police officer, who described finding a black Lexus SUV near the crime scene and determined that Larry Collins was the owner.  With the amount of evidence stacked against Larry Collins, it was not unreasonable for the Florida state trial court to conclude that Vilaire's live testimony probably would not have changed the outcome of Larry Collins' trial.

Furthermore, Larry Collins' ineffective counsel claim fails because he has not proffered what statements or information, if any, Vilaire would have introduced had she testified at trial.  "It is well-settled in this Circuit that a petitioner cannot establish an ineffective assistance claim simply by pointing to additional evidence that could have been presented."  Van Poyck v. Fla. Dep't of Corr., 290 F.3d 1318, 1324 (11th Cir. 2002) (citing Waters v. Thomas, 46 F.3d 1506, 1518 (11th Cir. 1995)).  Larry Collins' conclusory arguments about Vilaire cannot support his ineffective counsel claim.  See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991).

23

For these reasons, Larry Collins has not carried his burden to show that the state trial court's decision applying <u>Strickland</u> and denying his ineffective counsel claim was unreasonable or contrary to established Supreme Court precedent.[6]

## IV.  CONCLUSION

We affirm the district court's denial of Petitioner Larry Collins' § 2254 habeas corpus petition.

**AFFIRMED.**

---

[6]We do not address Petitioner Larry Collins' argument that the district court erred in denying him an evidentiary hearing because that issue falls outside of the COA.  See <u>Williams v. McNeil</u>, 557 F.3d 1287, 1290 n.4 (11th Cir. 2009) ("Our appellate review is limited to the issues specified in the COA.").  In any event, no evidentiary hearing is necessary because, for the reasons stated above, Larry Collins has not alleged facts that would warrant habeas relief under <u>Strickland</u>.  <u>Tejada</u>, 941 F.2d at 1559 (explaining that a petitioner is entitled to an evidentiary hearing when he alleges facts which, if true, would warrant habeas relief).